IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| **ELISHA DIANE COMPTON** | ) | CASE NO. 08-72212 |
| | ) | |
|     **Debtor** | ) | |

| | | |
|---|---|---|
| **MICHAEL E. COMPTON** | ) | |
| | ) | |
|     **Plaintiff** | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 09-07005 |
| **ELISHA DIANE COMPTON and** | ) | |
| **ROBERT E. WICK** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## MEMORANDUM DECISION

There is time-honored wisdom in the advice cautioning against making a substantial loan to a close family member, particularly one for the purpose of launching a risky business enterprise. All too often such ventures, fueled by optimistic excitement and deep personal attachments, end in grief for both parties. Such, unfortunately, is the case for Michael E. Compton and his younger sister, Elisha Diane Compton, who very sad to say is the Debtor in this chapter 7 bankruptcy case. Mr. Compton lent his sister at least $175,000[1] to enable her to open a dress shop, which she named Lasting Impressions LLC, in Pounding Mill, Virginia on August 1, 2004, according to her trial testimony (Tr. 34)[2] or in August of 2005, which was the

---

[1] According to Schedule F this was the petition date balance owing on this loan.

[2] References to the Transcript of Trial held on July 15, 2009 will be referred to as "Tr." followed by the appropriate page number reference.

date stated in her Statement of Financial Affairs and bankruptcy schedules.  By June of 2008[3] the business had failed.  At some point Mr. Compton brought suit against his sister in the Circuit Court of Tazewell County, Virginia, which was pending when Ms. Compton filed a chapter 7 petition in this Court on November 10, 2008.  In her petition Ms. Compton failed to list any information about an ownership interest which she had in certain family real estate as a result of a deed signed by her father at the time of his divorce from Elisha's mother when Elisha was twelve years old.  Mr. Compton knew of his sister's interest because he had an identical interest in the property by virtue of the same deed.  In this adversary proceeding Mr. Compton objects to his sister being granted a bankruptcy discharge because of her failure to disclose such information, which, had it remained unknown to the chapter 7 trustee, would have resulted in Ms. Compton obtaining the "fresh start" of a bankruptcy discharge without having to relinquish her interest in the family property.  Now that this information has come to light, there is no doubt that the Debtor will lose her interest in the real estate.  This adversary proceeding tests whether she will also lose a bankruptcy discharge as well.  For the reasons noted in this decision, the Court finds that Ms. Compton is entitled to the bankruptcy discharge she seeks.

## FINDINGS OF FACT

The factual recitation contained in the preceding paragraph will be incorporated into this section by reference and without repeating it here.  The family real estate to which the deed in question concerned originated with Michael and Elisha's mother's family and it was agreed as a part of the divorce settlement that the father would give up permanently any claim to

---

[3] This date is derived from the Debtor's bankruptcy Statement of Financial Affairs.

the property interest which he had owned jointly with the mother. To that end he signed a deed dated December 14, 1989, which was duly recorded in the Clerk's Office of the Circuit Court of Tazewell County, Virginia on June 1, 1990, in which he deeded his interest to the children of the marriage, Michael and Elisha. It is undisputed that this fact was not disclosed to either of them at that time. It appears that neither of them had any knowledge of anything about the agreement between the father and the mother and resulting deed until years later when the mother wanted to borrow money and pledge the property as collateral for the loan. Michael and Elisha were requested to sign the deed of trust securing their mother's loan in October 1995 and they did so. According to the Debtor's testimony, she had just turned eighteen at the time. They did the same thing for three subsequent loans obtained by the mother in August 28, 2002, May 27, 2003 and August 20, 2004. Although the latter deed of trust indicated that it secured a joint debt of Elisha and the mother, the Debtor testified unequivocally and without challenge at trial that all of the loans in question were solely the mother's loans and that she had not received any loan proceeds from them and that none had been used to provide funding for her business. (Tr. 32-4)

   Mr. Compton, who is approximately seven years older than his sister, testified that he had never seen the original deed signed by his father but that he had "been aware of it for several years." (Tr. 7, 9) That occurred when his mother asked him "to sign it for collateral on a loan that she took over." (Tr. 12) He indicated that his maternal grandfather had deeded the property, apparently consisting of approximately thirty acres, to his daughter and her husband and that the latter had "signed over" his rights and that "it was told to me that, that was for me and my sister." (Tr. 11) According to her testimony, Ms. Compton had a slightly different understanding, which was that "when [their mother] died it was to be given to my brother and I."

(Tr. 17) She further testified that she had never seen or known about the deed until she saw a copy of it in her counsel's office following the filing of her brother's objection to her discharge. *Id.* While she acknowledged that she had signed four deeds of trust against the property as collateral for various loans obtained by her mother, she repeatedly denied that she knew that she had any present interest in the property which should have been listed in her bankruptcy schedules and that her understanding had always been that her mother "owned it all." (Tr. 25) She further testified that she and her brother had to sign the deeds of trust so her mother could get the loans because

> if she died it was to go to us so she had to, we had to also agree because it was going to be willed to us, so that was it, that if something happened to her, we knew that she had put the land up, because it would be willed to us.

(Tr. 27-8) She further claimed that "if I had known, I would have listed it." (Tr. 28) When asked specifically by the Court why she understood that she and her brother had been asked to sign the deeds of trust if the property was just in her mother's name, Ms. Compton testified she thought that when "he signed over his rights" he was agreeing "that he would not come back" and that "based upon survivorship, . . . it would go to us, I thought that was why we had to sign." (Tr. 31) She also quoted her mother as explaining why she and her brother were being asked to sign the deeds of trust, "she just said because of where Dad had signed his rights over and it was to go to us when she died." (Tr. 32) When asked by the Court to clarify her testimony that her father had signed over his rights to her and her brother, she stated that she "thought it was just, if he was still alive and she had passed away, he could not come back" and that if she had understood it was anything more than that, she "would have listed it for the bankruptcy." (Tr. 35) Her final testimony about her understanding of the ownership question, was that "[w]hen she

[i.e., her mother] died, I thought it would come to us. Until she died, I thought it was hers. That was my understanding." (Tr. 36)

At the time of trial, Ms. Compton was thirty one years old. She testified in response to the Court's questions that she had an Associate's degree in business administration from Southwest Virginia Community College and a Bachelor's degree in communications from Old Dominion University. (Tr. 30) In her original bankruptcy schedules she listed no interest in real estate[4] and the following personal property: bedroom set, linens, etc. valued at $350, which was claimed as exempt in Schedule C; clothing valued at $200, which was also claimed as exempt; her interest in Lasting Impressions LLC valued at $1.00; and a one-half interest in a 2004 Lincoln Navigator valued at $7,562.50. Although her Statement of Financial Affairs indicated that on October 31, 2008 she had paid $1,310.00 to her bankruptcy counsel for filing and attorney's fees for the bankruptcy, the Debtor denied in Schedule B that she had any money at all either on hand or in a bank account as of the time of her petition filing ten days later. This representation was not challenged at trial.[5] According to Schedule D the Lincoln Navigator motor vehicle was subject to a lien securing a loan upon which the balance owed exceeded the vehicle's value. She listed no non-exempt property which might be administered by the trustee for the benefit of her creditors. She listed nineteen unsecured creditors to which she owed a scheduled total of $191,269.44. By far the largest of these creditors was her brother, Michael, to

---

[4] The instructions for completing Schedule A of the bankruptcy petition instruct that any interest owned in real estate is to be listed, including any "legal, equitable or future interest."

[5] Ms. Compton testified at trial that she paid her mother $200 "to let us [apparently Ms. Compton and her boyfriend] stay there, because we are trying to save up money to buy a home[,]" but that she had "used it mostly in legal fees." (Tr. 25)

whom she listed a debt with a balance owed of $175,000.00. Accordingly, approximately 91% of the total unsecured debt that she owed was to her brother. Following the filing of this adversary proceeding but before trial the Debtor filed three amended versions of Schedule A, in which she made the following representations concerning her ownership interest in the family property: "Possible undivided 1/4 interest in real estate located at . . . Tazewell County, . . . (Total value 76,000.00)" with the value of the Debtor's interest being $19,000, filed on January 29, 2009; then amended to include "undivided 1/4 *remainder* interest" (emphasis added) with the value of the Debtor's interest being reduced to $6,456.96, filed on February 24, 2009; and then finally on May 29, 2009 amended back to what was listed in the first amended Schedule A.[6] The property is indicated to be unencumbered as of the filing date. No testimony was offered at trial to explain these variations in the amended schedules dealing with her ownership in the family property but neither were any questions asked about them. The Debtor's original Schedule I, filed on November 24, 2008, indicated that the Debtor was unemployed with no monthly income, while Schedule J showed monthly expenses of $844.00. Then on March 17, 2009, the Debtor filed Amended Schedules I and J that indicated the Debtor was employed as a store clerk for one month earning $450.00 per month and increasing her monthly expenses to $1,269.00.[7] No evidence has been offered, other than with respect to the real estate interest already discussed, suggesting that the Debtor has failed to disclose any other relevant information about

---

[6] Counsel for Mr. Compton asked the Court to take judicial notice of Schedule A at the trial. (Tr. 27)

[7] In response to a post-trial inquiry by the Court to Ms. Compton's counsel about whether amended Schedules I and J were intended to reflect the Debtor's pre-petition job status or to reflect post-petition employment, he indicated that the latter was the case.

6

her financial circumstances which are relevant to the proper administration of her bankruptcy estate.[8]  Mr. Compton's objection to Ms. Compton's discharge is based upon three grounds according to the Stipulation filed by the parties before trial:  Under 11 U.S.C. § 727(a)(2)(A), § 727(a)(2)(B), and/or § 727(a)(4), the Debtor is not entitled to a discharge as she represented that she owned no interest in real estate of any kind on her initial Schedule A; that during the creditors' meeting, she stated this to be true and correct; and she further testified at the creditors' meeting that she had not disposed of any assets within the year preceding the filing of this action except those pertaining to her business.  The latter ground seems to have been abandoned at trial as no evidence was offered that the Debtor had transferred any property prior to her bankruptcy filing.  Although Mr. Compton testified at trial, he never claimed that he had ever had any discussion with his sister about their common ownership in the family property as a result of the 1989 deed signed by their father or that she had ever made any statement to him or in his presence about her understanding of the matter which was at odds with her testimony at trial.  Mrs. Compton, the parties' mother, also was present at trial but she was not called as a witness by either party.

After the hearing, the Court requested that counsel for Mr. Compton submit written argument supporting the contention that the evidence offered at trial established fraudulent intent on the Debtor's part.  On September 10, 2009, counsel for Mr. Compton submitted his brief asserting that the evidence establishes that the Debtor did not act in good

---

[8] Although the Complaint alleges that the Debtor may have ownership of other assets which were not scheduled, at trial Mr. Compton confirmed an answer to an interrogatory in the adversary proceeding that no other property interest had been identified which had been left undisclosed. (Tr. 11)

faith in disclosing what she believed or had reason to believe to be her assets and that this failure is sufficient to establish her intent to hinder or delay. Given the Debtor's history in dealing with the property, counsel argues that the Debtor knew or should have known of the need to include this property, even if she was not sure of its nature and type. By choosing not do so, she acted to the detriment of her creditors which amounts to fraud on her part in that it prevented the issue from being examined. Under § 727(a)(2)(A), counsel asserts that failing to list the asset clearly meets the concealment requirement and that the Debtor's intent can be inferred from her actual knowledge of the asset as shown by the deeds of trust and her testimony. Under § 727(a)(2)(B), counsel asserts that while the Debtor testified at the meeting of creditors that she fully disclosed all of her assets and that her schedules were full and complete, that is not the case as she had reason to believe that she had this additional asset but chose not to list it. Finally, under § 727(a)(4)(A), counsel asserts that the Debtor made a false oath knowingly and fraudulently as the petition and schedules are completed under oath and provide for vested and contingent assets to be disclosed; additionally the Debtor had the opportunity to cure this omission at the meeting of creditors and did not.

The Court finds that the original Schedule A filed by the Debtor was incorrect and that the information which ought to have been revealed in such schedule, but was not, was quite material to the administration of the bankruptcy estate. Accordingly, the oaths given by Ms. Compton in connection with the signing of her petition and at the meeting of creditors were false. The Court further finds that such oaths were knowingly false in the sense that she believed at the time they were made that she had some kind of future interest in the property which was of a kind that her consent and signature were required in order to pledge the property as collateral

for a loan.  The Court fails to find, however, that the preponderance of the evidence establishes that her oaths were "fraudulently" made.  Although the instructions accompanying Schedule A required that the Debtor disclose any interest in real estate, including any "future interest," the Court ultimately is not persuaded that Ms. Compton intentionally withheld information which she knew that she ought to reveal or that she understood that she had, as of the time of filing her bankruptcy petition, an interest in real property which was susceptible of being sold or otherwise administered for the benefit of her creditors.

CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  Determinations regarding objections to discharges are "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(J).

While the factual background of the present dispute is assuredly unfortunate and its likely ramifications to the Compton family are distressing, the legal principles governing its determination are clear, even if the application of those principles to the facts is not nearly so clear.  Section 727(a)(4)(A) of the Bankruptcy Code provides that a chapter 7 discharge must be denied to a debtor who "knowingly and fraudulently, in or connection with the case . . . [has] made a false oath or account."[9]  The Court of Appeals for this Circuit has noted that for this

---

[9] In his Complaint Mr. Compton also relies on 11 U.S.C.§§ 727(a)(2)(A) and (a)(2)(B). The former section relates to actions by a bankruptcy debtor "within one year before the date of the filing of the petition," while the latter section relates,as applicable to the facts of this dispute, to any act whereby the debtor has "concealed" from the Trustee property of the estate after the date of filing of the petition "with intent to hinder, delay or defraud[.]" As previously noted, the

section to be applicable "the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987), quoted in the more recent decision of *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 352 (4th Cir. 2007). In addition, the false oath "must have related to a material matter." *Williamson*, 828 F.2d at 251. A false statement is material if it concerns "the existence . . . of [the debtor's] property." *Id.* at 252. *Accord, Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 251 at fn. 19 (4th Cir. 1993) (even if the asset is "worthless"). The party objecting to the debtor's discharge has the burden of proving all necessary elements of the objection by a preponderance of the evidence. *Fed. R. Bankr. Proc*. 4005; *Farouki,* 14 F.3d at 249 at fn. 17. "Although the burden [of going froward with the evidence] may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a prima facie case, the ultimate burden rests with the creditor." *Id*., 248 F.3d at 249.

The statutory provisions upon which Mr. Compton bases his objection require that considerably more than simple inaccuracy be shown. That is to say that it must be

---

Plaintiff failed to offer any evidence at trial that the Debtor had done anything before filing, other than signing her petition and schedules, which would implicate the former section. The only act after filing which has been challenged is Ms. Compton's testimony at the creditors' meeting that her bankruptcy schedules were accurate. The Court believes that the proper analysis of the objection to discharge is under § 727(a)(4)(A), *i.e.*, whether Ms. Compton's bankruptcy schedules were prepared with fraudulent intent. The only way the Court perceives that (a)(4)(A) [false schedules] would not be applicable with respect to the present dispute, but (a)(2)(B) [false testimony] would be, is if evidence had been offered suggesting that the Debtor signed her schedules innocently but prior to the creditors' meeting learned that they were inaccurate and nevertheless confirmed their accuracy in response to the Trustee's questioning. No evidence has been offered suggesting such a situation. So, under either statute, the critical question comes down to whether the failure to list the interest in real estate was an innocent mistake or was a fraudulent act.

established that the debtor made a statement which he or she knew to be false "willfully and with intent to defraud." The oath required of Ms. Compton in connection with her bankruptcy filing was that she reveal any interest in real estate which she knew about, not simply any interest which she believed that she could presently sell or pledge for a loan or which could be sold by a bankruptcy trustee. She did not do that. By her testimony she acknowledged that she believed at the time she signed her petition that in some manner her father had "signed over" his rights in family property with the result that his interest in such property that he had acquired from her grandfather would pass to her brother and herself at her mother's death. As a result of that event she realized that in order for her mother to borrow money against this property, it was necessary that she and her brother consent and that they had done so on four separate occasions. Therefore, based on her own testimony, the Debtor made an oath in connection with this bankruptcy case that she had no interest in real estate when she clearly did, even though her understanding of what that interest actually amounted to was, from her uncontradicted testimony, seriously mistaken and confused. She certainly made that oath intentionally and therefore willfully. That the Debtor owns an interest in real property, whether its value be $19,000 or $6,457, is "material" in either eventuality to her bankruptcy case needs no discussion to establish such fact, it is obvious.

      The problem is that the evidence is not sufficient in the Court's view to satisfy Mr. Compton's burden to establish that his sister acted fraudulently. It is a close and difficult question under the facts presented here, but the Bankruptcy Code is structured to impose the burden of proof to establish that a discharge ought to be denied upon the party objecting to the discharge rather than requiring the debtor to prove that the filed objection is not applicable.

That is to say that the system assumes the best about individuals seeking bankruptcy relief, rather than the worst, and that if the worst is indeed the case, that such be proven in all necessary respects. This policy choice is similar to the one made by our system with respect to criminal charges, which is that it is preferable that some guilty parties go free than for innocent parties to go to prison. Similarly, in the bankruptcy context the placement of the burden of proof upon the creditor reflects a policy choice that it is better in close cases for an arguably undeserving debtor to receive a discharge than for a deserving one to be denied such relief. The Court has decided that fraudulent intent on Ms. Compton's part has not been established by the greater weight of the evidence for several reasons: the demeanor of the witnesses, the consistent account by the Debtor that she believed that her mother owned the property during her lifetime and that it would belong to her brother and herself at her mother's death if they survived her, the absence of any testimony affirmatively tending to prove that Elisha's account of her understanding of her ownership interest in the property was inconsistent with anything she had ever said before or that any of her other testimony at trial was mistaken or otherwise false, the absence of any proof that Ms. Compton realized that even a future interest in real property had to be included in the bankruptcy filing and her unqualified insistence that she would have included such interest in her schedules if she had known that such was required, the absence of any evidence of any other inaccuracy in the bankruptcy schedules or the Debtor's testimony at the creditors' meeting, the absence of any evidence that Ms. Compton had ever represented to anyone that she had a current interest in the family property, such as in a loan application or personal financial statement, or in any manner had used her interest in the property to her own advantage, and finally, the improbability that she would have omitted with

deceitful intent important and required information from her bankruptcy filing, information which she had to know was equally known to her brother, when he was not only her major creditor by far, but who also had already taken her to state court to try and obtain a judgment against her for the dress shop loan and therefore was obviously adverse and antagonistic to her. While being both a liar and very foolish are certainly not mutually exclusive characteristics, the Court does not believe that such a confluence has been established with respect to the Debtor.

The Court recognizes that line of authority holding that a demonstrated "reckless indifference to the truth and accuracy of [one's] schedules and statement of financial affairs . . . is the functional equivalent of an intent to deceive." *Cesnick v. Cannon (In re Cannon)*, 2009 Bank. LEXIS 2000, at *11 (Bankr. N.D.W.Va. July 24, 2009). *See also In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998); *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 1987); *Jordan v. Bren (In re Bren)*, 303 B.R. 610, 614 (B.A.P. 8th Cir. 2004); *Dean v. McDow (In re Dean)*, 299 B.R. 133, 140 (E.D. Va. 2003); 6 *Collier on Bankruptcy* ¶ 727.04[1][a] at p. 727-40 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). These decisions generally deal with multiple omissions and other inaccuracies in the schedules, situations where the debtors admit that they did not review the schedules before signing them, or where a debtor's pre-petition conduct, such as listing assets in financial statements or tax returns but which are not disclosed in the bankruptcy schedules, offer telling evidence that a debtor well knew of the existence of financial interests but failed to schedule them in bankruptcy. Suffice it to say that the Court concludes that these decisions are not applicable to the objection filed by Mr. Compton, which according to the Stipulation relies exclusively on the failure to disclose the ownership interest in the real estate, which concerns only one omission, albeit a very significant one, and the question

is whether that omission was simply an innocent mistake or was the result of fraudulent intent. The Court has found that the latter possibility has not been proven by a preponderance of the evidence.

## CONCLUSION

Upon the findings of fact and conclusions of law set forth above, the Court determines that the plaintiff's Objection to the discharge has not been established. Accordingly, it will enter a contemporaneous order dismissing the Complaint with prejudice.

This 16th day of September, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE